UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHIPPEWA COUNTY WAR
MEMORIAL HOSPITAL,

    Plaintiff,

v.                                                                  Case No. 2:11-cv-10
                                                                    HON. TIMOTHY P. GREELEY
MICHIGAN NURSES ASSOCIATION,

    Defendant.
_____/

**OPINION**

The events that form the basis of this complaint occurred at the Behavioral Health Center ("BHC") at Chippewa County War Memorial Hospital. The incident that occurred on March 12, 2009, demonstrates the stressful nature of employment in a mental health facility. Shortly before 8:00 a.m., a patient ("TG") in BHC became agitated and one of the nurses in the facility attempted to calm her down. Unfortunately, the patient's behavior did not improve and the patient began screaming. Bridget Nodurft, a registered nurse, was assigned patient TG on that day. TG's behavior escalated and she was screaming and pulling her hair. Other nurses attempted to de-escalate the situation. Greg Wolf, early in his first day as Interim Nurse Manager at BHC, heard the commotion and came to assist in the efforts to de-escalate the situation. Wolf initially spoke to TG, but was unsuccessful in his efforts to calm her down. He then assisted in taking TG to a sitting position on the floor. TG's behavior did not improve and Wolf, with the assistance of other nurses, forced TG to a prone position. One of the nurses called for an injection of Haldol, which was prepared and administered to TG while she was being restrained on the floor. During the incident,

Wolf called out for additional help, specifically calling for Nodurft to provide assistance. Nodurft testified that when she arrived, she attempted to assist with the administration of the medication by securing an alcohol swab for the injection. The injection was apparently made without an alcohol swab. Nodurft indicated that she and another nurse stood over TG and saw that TG was fully restrained with a staff member holding each limb. Nodurft suggested to Wolf that he let TG get up. According to Nodurft, Wolf refused, stating that TG "hasn't earned the right, she has to learn my boundaries." Wolf initially indicated that he wanted TG taken to a seclusion room, which was about 75 feet down the hall. Nodurft left to unlock the door to the seclusion room. When Nodurft returned, she indicated that she did not believe there were enough people to take TG to the seclusion room. At this time, another patient stepped into the hallway where the incident was occurring and Nodurft took this patient out of the area. When she returned, "TG was standing in the doorway of her room screaming at Wolf, 'get away, I hate men' and Wolf was yelling back at her. (TG was a young woman with mild retardation, other psychiatric problems, and a history of sexual abuse, and it had been reported that a few days previously a male patient had been found in her bed having sex with her.)" Docket #19, Exhibit 1 at 4-5.

Apparently a video recording was made of the events, but unfortunately some of the portions of this video recording, including the take down and several minutes immediately after, were missing. Don Hendershot, Assistant Director of Plant and Environmental Services, had preserved some, but not all, of the video recording pursuant to instructions received from his supervisors.

The events on the morning of March 12, 2009, were undoubtedly stressful for all those involved. Following the incident with TG, there was a heated exchange between Wolf and

Nodurft. Nodurft's employer reviewed the incident of March 12, 2009, and concluded that Nodurft's conduct was insubordinate for failing to provide assistance to Wolf. In addition, the Hospital maintained that Nodurft had falsely stated that she did not know Wolf was the nurse manager at the time. The Hospital concluded that Nodurft's conduct during the incident was just cause for her discharge and thus the decision was made to terminate Nodurft's employment with BHC.

Nodurft was a member of a collective bargaining association which had negotiated a collective bargaining agreement with the Hospital. This agreement provided Nodurft with the ability to file a grievance regarding her discharge. Pursuant to the negotiated contract, this grievance procedure provided for resolution of disputes through arbitration. The parties agreed:

> The arbitrator shall be empowered to rule only in a grievance, which involves an interpretation or application of this agreement.
>
> He shall not add to, subtract from, ignore or change any of the provisions of this agreement.
>
> The arbitrator's decision shall be final and binding.

Docket #1, Exhibit 1, at 10. Nodurft's grievance proceeded to arbitration and arbitration hearings were held on December 8, 2009, January 5, 2010, and July 8, 2010. The parties filed comprehensive briefs on September 8, 2010, and on October 11, 2010, arbitrator Paul E. Glendon issued an award sustaining the grievance and ordering that Nodurft be reinstated to her position with back pay. Arbitrator Glendon issued a comprehensive 16-page award, a copy of which is attached. In the award, the arbitrator resolves disputed issues of fact as to what occurred on March 12, 2009. The arbitrator concludes that the facts, as found by the arbitrator, did not establish just cause for Nodurft's discharge.

The Hospital was deeply disappointed by the decision of the arbitrator and filed the instant complaint, seeking an order from this Court vacating the arbitrator's award. According to the Hospital,

> The Arbitrator's award is contrary to public policy because it requires the Hospital to reinstate an employee, who through her undisputed refusals to assist with tasks that are a basic and fundamental part of an RN's job, engaged in patient neglect, and placed patient and BHC staff safety at risk. Reinstating Ms. Nodurft under such circumstances would have a detrimental impact upon patient care and undermine the Hospital's ability to provide a safe environment and competent nursing care to mental health patients at the BHC as required by the Michigan Mental Health Code. For the reasons set forth below and in the attached Exhibits, the Hospital respectfully requests the Court to vacate the Arbitrator's October 11, 2010 award because it violates public policy.

Docket #19 at 2. The parties fully briefed the matter and a hearing was held before the undersigned on August 23, 2011.

The Michigan Nurses Association ("MNA") maintains that the Hospital's motion to vacate the award was not timely served on MNA and was therefore filed outside the statute of limitations. Both parties agree that for this matter to have been timely filed, the Hospital was required to serve the MNA within three months of the award, or by January 11, 2011. According to the Hospital:

> The applicable rules for serving motions in federal court is Federal Rule of Civil Procedure 5 which states that service must be made upon a party's attorney and "[a] paper is served under this rule by mailing it to the person's last known address—in which event service is complete upon mailing." FRCP 5(b)(1), 5(b)(2)(E). That was done in this case since the Hospital mailed a copy of its Motion to Vacate to the MNA's attorney, Anita Szczepanski, on January 11, 2011. The Proof of Service filed with the Court, along with a letter mailed to Ms. Szczepanski on January 11, 2011, confirms service of the Motion

- 4 -

>  to Vacate on that date in accordance with Federal Rule of Civil Procedure 5.

Docket #25 at 3-4.

MNA has submitted the affidavit of Anita Szczepanski. In the affidavit, Ms. Szczepanski indicates that she received the complaint to vacate the arbitration award in this matter at her office on January 13, 2011, "in an envelope postmarked January 12, 2011 . . . I did not receive any documents related to this case from Mr. Graham's office with a January 11, 2011, postmark." The proof of service filed by the Hospital on January 11, 2011, states "I served via U.S. Mail a copy of the Complaint to Vacate Arbitration Award and Proof of Service to Anita Szczepanski, Esq." *See* Docket #2.

In *Webster v. A.T. Kearney, Inc.*, 507 F.3d 568 (7th Cir. 2007), the court concluded that filing a complaint to vacate an arbitration award within the three-month limitation period satisfied the service requirements of Section 12 of the Federal Arbitration Act. The parties do not dispute that MNA was on notice that the Hospital was seeking to vacate the arbitrator's award and that on January 11, 2011, Szczepanski and Kurt Graham, attorney for the Hospital, had telephone discussions regarding the complaint that was filed that day. MNA now relies upon the fact that the materials received on January 13, 2011, bore a postmark of January 12, 2011, and thus were not filed on or before January 11, 2011. The proof of service in this matter indicates that the Complaint to Vacate Arbitration Award was mailed on January 11, 2011. Accordingly, the undersigned concludes that the complaint was timely and properly served by U.S. Mail. *See Escobar v. Shearson Lehman Hutton, Inc.*, 762 F.Supp. 461 (D. Puerto Rico, 1991).

The Court now turns to the Hospital's request that the arbitration award be vacated and MNA's competing request that summary judgment be issued enforcing the award. In reaching

this decision, the Court is guided by the extremely well written opinion of Judge Sutton in *Michigan Family Resources, Inc. v. Service Employees International Union Local 517M*, 475 F.3d 746 (6th Cir. 2007). In that case, the Court explained:

> Our decision in *Cement Divisions* of course does not reflect these refinements of the Steelworkers Trilogy because the court had no reason to know they existed. Accordingly, instead of continuing to apply *Cement Divisions'* four-part inquiry, a test we now overrule, we will consider the questions of "procedural aberration" that *Misco* and *Garvey* identify. *Misco*, 484 U.S. at 40 n. 10, 108 S.Ct. 364. Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"? So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made "serious," "improvident" or "silly" errors in resolving the merits of the dispute.
>
> These relatively straightforward inquiries, we acknowledge, mask a harder question: What role, if any, still remains for a court to consider the arbitrator's resolution of the merits in determining whether he was "arguably construing" the contract? The union, supported by the national AFL-CIO, argues that the court's view of the merits has nothing to do with this process-driven question. So long as the arbitrator purported to construe the contract, that is the end of the matter. MFR argues by contrast that federal courts always must consider the merits of a dispute to determine whether the arbitrator was arguably construing the contract.
>
> We respectfully disagree with both of them. The Court's repeated insistence that the federal courts must tolerate "serious" arbitral errors suggests that judicial consideration of the merits of a dispute is the rare exception, not the rule. At the same time, we cannot ignore the specter that an arbitration decision could be so "ignor[ant]" of the contract's "plain language," *Misco*, 484 U.S. at 38, 108 S.Ct. 364, as to make implausible any contention that the arbitrator was construing the contract. An interpretation of a contract thus could be "so untethered to" the terms of the agreement, to borrow a phrase from our Circuit Justice, *Garvey*, 532 U.S. at 512, 121 S.Ct. 1724 (Stevens, J., dissenting), that it would cast doubt on whether the arbitrator

> indeed was engaged in interpretation. Such an exception of course is reserved for the rare case. For in most cases, it will suffice to enforce the award that the arbitrator appeared to be engaged in interpretation, and if there is doubt we will presume that the arbitrator was doing just that. *Cf. Warrior & Gulf*, 363 U.S. at 582-83, 80 S.Ct. 1347 ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.").
>
> This view of the "arguably construing" inquiry no doubt will permit only the most egregious awards to be vacated. But it is a view that respects the parties' decision to hire their own judge to resolve their disputes, a view that respects the finality clause in most arbitration agreements, *see* JA 27 (stating that "the arbitrator shall have full authority to render a decision which shall be final and binding upon both parties"), and a view whose imperfections can be remedied by selecting better arbitrators.

*Id.* at 753-754.

The Hospital does not maintain that the arbitrator acted outside his authority or that the arbitrator committed fraud, had a conflict of interest, or otherwise acted dishonestly. The Hospital maintains that the arbitration award should be vacated because the decision of the arbitrator violates well-defined and dominant public policy. This argument is based on the assertion of the Hospital that Nurse Nodurft intentionally refused to assist with the restrain and seclusion of TG, that Nurse Nodurft engaged in neglect of a patient, and that Nurse Nodurft's actions resulted in a failure to provide safe and competent nursing care. Unfortunately for the Hospital, there is no support for its argument that the arbitrator's decision violates public policy. More importantly, application of the test enunciated in *Michigan Family Resources, Inc.* mandates enforcing the arbitration award. The parties to the collective bargaining agreement at issue in this case negotiated a contract which provided that no employee could be discharged absent just cause. Furthermore, the contract provided for final and binding arbitration of disputes regarding whether or not just cause for

discharge existed. It is without dispute that the arbitrator was asked to determine, based on the facts presented, whether or not there was just cause to support the discharge. In a thorough award, the arbitrator discussed the arguments presented by the Hospital which it believed supported just cause for discharge. The arbitrator rejected those arguments.

Importantly, the arbitrator found that the conduct of Nurse Nodurft on the day in question was not insubordinate and was motivated by her desire to do that which she believed was in the best interest of TG. The Hospital's arguments in support of their motion to vacate the award are nothing more than an effort to reargue the facts presented to the arbitrator. The facts as found by the arbitrator cannot be said to contain serious, improvident or silly errors. The Hospital maintains that the arbitration award ignores the fact that Nodurft's conduct violated the Michigan Mental Health Code. The arbitrator did not, however, find that Nodurft's conduct violated the Michigan Mental Health Code. The arbitrator did not find that Nodurft's actions resulted in a public policy violation. Furthermore, the arbitrator found that Nodurft did not refuse to assist Wolf in his efforts to deal with TG. In fact, the arbitrator found that "it is undisputed that she did assist." The Hospital consistently argues that the arbitrator ignored evidence presented at the arbitration hearing. A thorough review of the arbitration award establishes that the arbitrator did not ignore this evidence. The arbitrator rejected the evidence. As both parties recognize, the arbitrator was tasked with determining whether or not there was just cause to support the discharge. There are competing factual views as to what occurred on March 12, 2009. The Hospital maintained that Nodurft was an insubordinate nurse who took actions that risked the safety of the patient. The MNA presented evidence that Wolf was an unqualified nursing supervisor whose actions were responsible for the escalating problems with TG. According to the MNA, Nodurft's actions were in the best interest

of the patient, were not insubordinate, and were not in violation of public policy. The arbitrator thoroughly discussed the arguments made by the Hospital and rejected many of the factual assertions. The arbitration decision is consistent with the facts presented by the MNA. It was the arbitrator's duty to judge the credibility of witnesses and make findings as to disputed factual issues.

One argument made by the Hospital is that the arbitrator ignored the testimony and orders of Dr. von Greiff. According to the Hospital, "the arbitrator did not discuss any of Dr. von Greiff's testimony, or evidence in his award." This is a misstatement. A review of the arbitration award establishes that the arbitrator did not accept the facts that formed the basis of Dr. von Greiff's opinions and, thus, did not accept Dr. von Greiff's opinions. The arbitrator is not required to discuss every argument and the testimony of every witness presented at an arbitration hearing. The arbitration hearing in the instant case took three days. The arbitrator cannot be faulted for not discussing the testimony of each and every witness.

Obviously, the Hospital was very upset with the decision of the arbitrator. Morever, the Hospital certainly believes that Nodurft was insubordinate and took actions which endangered a patient. The position of the Hospital, however, is not supported by the factual findings of the arbitrator. Applying the standards set forth in *Michigan Family Resources, Inc.*, this Court must uphold the arbitration award.

The most difficult issue presented to this Court is whether the MNA is entitled to attorney fees. In *Monroe Auto Equipment Co. v. International Union, United Automotive, Aerospace and Agricultural Implement Workers of America (UAW)*, 981 F.2d 261 (6th Cir. 1992), in reversing an award of attorney fees to the Union, the court explained:

> A district court's award or denial of attorney fees is reviewed for abuse of discretion. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 970 F.2d

> 1461, 1472 (6th Cir.1992). The general rule in the United States is that a prevailing party may not ordinarily recover attorney fees in the absence of a statute or enforceable contract providing for a fee award. *Shimman v. International Union of Operating Engineers, Local 18*, 744 F.2d 1226, 1229 (6th Cir.1984) (en banc), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). Neither party contends there is any specific statutory authority or contract right in the present case. The only exception to the American rule that could possibly apply to this case is the "bad faith" exception. We can find no basis for applying it. This court in *Ray A. Scharer and Co. v. Plabell Rubber Products*, 858 F.2d 317, 320 (6th Cir.1988), explained that exception by stating that the "normal [American] rule does not apply, however, where a party or counsel have acted in bad faith in the instigation or conduct of litigation, and in those circumstances, the court has the inherent authority to assess an award of attorney's fees against either the litigant or his attorney." (citations omitted). The court went on to say that "[a]n award of attorney's fees ... is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Id.* (citation omitted).
>
> * * *
>
> These facts distinguish the present case from the cases cited by the UAW in which attorney fee awards were approved. For example, in *Dreis & Krump Mfg. v. International Ass'n of Machinists & Aerospace Workers*, 802 F.2d 247, 249 (7th Cir.1986), the court awarded fees after concluding that the "company had no ground for challenging the [arbitrator's] decision in court; also, it filed this suit after the statute of limitations had run."

*Id*. at 269-270.

The Sixth Circuit's decision in *Monroe Auto Equipment Company* referred to Judge Posner's decision in *Dreis & Krump Mfg. Co. v. International Ass'n of Machinists & Aerospace Workers, District No. 8*, 802 F.2d 247, 249 (7th Cir.1986), in which the court explained:

> [T]he company's attack on the award was frivolous, thus entitling the union to attorney's fees both in the district court and in this court. The company should have realized that the suit was barred by the statute of limitations, barred by its having submitted to arbitration without any reservations, and barred by the arbitrator's opinion which made

- 10 -

> clear that he was interpreting the collective bargaining agreement - whether correctly or not could make no difference in court.
>
> * * *
>
> No competent attorney who made a reasonable inquiry into the state of the law when this suit was filed . . . could have thought the suit had any possible merit. He should have known it was time-barred and in any event did not come within the limited scope of suits to set aside a labor arbitrator's award.

*Id.* at 254-255.

A thorough review of the materials filed by the parties and consideration of the arguments made to this Court leads to the conclusion that the Hospital's decision to seek to vacate the arbitration award was made without regard to the law of this Circuit. The Hospital was concerned that it had an insubordinate nurse who had taken action that was contrary to patient safety being reinstated by an arbitration award. The question presented, however, is whether "a competent attorney who had made a reasonable inquiry into the state of the law when this suit was filed . . . could have thought the suit had any possible merit." This is a close question. The Hospital argues that its efforts to vacate the arbitration award were based "upon a reasonable interpretation of the Michigan Public Health Code." Docket #25 at 9. The Hospital's effort to vacate the arbitration award, however, was really an effort to reargue the facts presented to the arbitrator. The parties had bargained for final and binding arbitration. The arbitrator held three days of hearings and issued an award rejecting the Hospital's version of the facts. This case does not present the "rare case"[1] justifying a challenge to the arbitrator's decision in this Court. The arbitrator's award was not "egregious." The Hospital knew or should have known that an action to vacate the award found <u>no</u>

---

[1] *See Michigan Family Resources, Inc.*

support in the law of this Circuit. This case simply did not come within the limited scope of suits where a challenge to the award was appropriate.

Accordingly, for the reasons set forth above, Plaintiff's Motion to Vacate Arbitration Award (Docket #19) is denied and Defendant/Counter-Plaintiff's Motion for Summary Judgment (Docket #17) is granted. Finally, Defendant/Counter-Plaintiff's request for attorney fees will is granted.

A Judgment consistent with this Opinion will issue.

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: September 7, 2011